1
2
3
4
5
6
7

8              IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10 UNITED STATES OF AMERICA,

11       Plaintiff,          Cr. No. S-05-0443 WBS

12   vs.

13 NARCISCO GALLEGOS MORALES,

14       Defendant.      <u>ORDER</u>

15 _____/

16      On February 9, 2007, the court heard argument on defendant's motion for an order

17 releasing the prosecutor's legal instructions to the grand jury.  Daniel J. Broderick, Federal

18 Defender, appeared for defendant; Samuel Wong, Assistant United States Attorney, appeared for

19 the government.  Following argument, the government filed supplemental briefing to which

20 defendant has not replied.

21 I.  <u>Background</u>

22      On October 19, 2005, an indictment was filed, charging Jesus Huiltron Sanchez,

23 Espiridion Valdovinos Lucatero, Francisco Perez Lucatero, and defendant Morales with one

24 count of conspiring to manufacture marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 846 and

25 one count of manufacturing marijuana in violation of 21 U.S.C. § 841(a)(1).

26 /////

1

1    On October 11, 2006, defendants Sanchez, Espiridion Valdovinos Lucatero, and

2  Francisco Perez Lucatero waived indictment and pleaded guilty to an Information, charging them

3  with one count of violating 18 U.S.C. § 924(c)(1)(A)(i), possession of a firearm, identified as a

4  loaded Stevens Model 987, .22 caliber semi-automatic rifle, serial number E691931, in

5  furtherance of the drug trafficking crimes alleged in the original indictment.

6    On November 16, 2006, a superseding indictment was returned against defendant.

7  Count one charged him with conspiracy to manufacture at least 1000 marijuana plants, in

8  violation of 21 U.S.C. §§ 841(a)(1) and 846.  Count two alleged that defendant manufactured at

9  least 1000 marijuana plants in violation of 21 U.S.C. § 841(a)(1).  Count three charged defendant

10  with possession of firearms in furtherance of drug trafficking crimes alleged in counts one and

11  two, in violation of 18 U.S.C. § 924(c)(1)(A)(i); the guns were identified as a loaded Stevens

12  Model 987, .22 caliber semi-automatic rifle, serial number E691931 and a loaded Springfield

13  Armory Model M6 Scout, .22 long rifle caliber/.410 gauge, combination rifle and shotgun, serial

14  number unknown.

15    On December 19, 2006, defendant filed a motion for an order directing the release

16  of the prosecutor's legal instructions to the grand jury.

17    The co-defendants' plea agreements provide factual background for the motion.

18  When Shasta County law enforcement officials raided a marijuana cultivation site, they found

19  four separate areas.  In what is designated area three, officers found defendant, who was arrested,

20  and two other males, who fled, as well as a rifle, serial number E691931.  In area one, officers

21  found marijuana, a pellet rifle, and identification documents belonging to co-defendants Sanchez

22  and Espiridion Valdovinos Lucatero.  In area four, officers found processed marijuana and

23  marijuana seed and the Springfield Armory Model M6 Scout.  See, e.g., Sanchez Plea

24  Agreement, Factual Basis at 13-14 (docket no. 64).

25  /////

26  /////

1    The defense and the government agree that the three co-defendants who pleaded

2  guilty denied knowing defendant.  According to the plea agreements, these three defendants

3  worked in the garden along with four others.  Id. at 15-16.

4  II.  Analysis

5    Defendant argues that the government "has not developed or learned of any

6  evidence linking Mr. Morales to any of the weapons located at the marijuana gardens.  Thus, the

7  only possible legal theory . . . to justify this additional [§ 924(c) gun] charge is Pinkerton[1]

8  conspiratorial liability."  Motion at 3.  He then argues, in essence, that had the grand jury been

9  instructed on Pinkerton liability as interpreted by the Ninth Circuit in United States v. Ruiz, 462

10 F.3d 1082 (9th Cir. 2006), it would not have indicted him on the gun charges.  Accordingly, he

11 asks for a transcript of the prosecutor's instructions to the grand jury as a basis for a motion to

12 dismiss based on prosecutorial misconduct before the grand jury; he argues that prosecutorial

13 misbehavior can usurp the grand jury's role.  See United States v. Mechanik, 475 U.S. 66 (1986)

14 (motion to dismiss for violation of Fed. R. Cr. P. 6(d) rendered moot by jury verdict); United

15 States v. Samango, 607 F.2d 877, 882 (9th Cir. 1979) (flagrant misconduct may usurp grand

16 jury's role).  However, as the Supreme Court has observed, "only a defect so fundamental that it

17 causes the grand jury no longer to be a grand jury, or the indictment no longer to be an

18 indictment, gives rise to the constitutional right not to be tried."  Midland Asphalt Corporation v.

19 /////

20 /////

21 /////

22 /////

23

24    [1]  Pinkerton v. United States, 328 U.S. 640, 645-48 (1946) (creating a rule that makes a
conspirator criminally liable for the substantive offenses committed by a co-conspirator when the

25 offenses are reasonably foreseeable and committed in furtherance of the conspiracy).

26

3

1   United States, 489 U.S. 794, 802 (1989).  The Ninth Circuit has noted that:

2         [T]he prosecutor has no duty to outline all the elements of
      conspiracy so long as the instructions given are not flagrantly
3         misleading or so long as all the elements are at least implied.
      Erroneous grand jury instructions do not automatically invalidate
4         an otherwise proper grand jury indictment.  Appellants must show
      the conduct of the prosecutor was so flagrant it deceived the grand
5         jury in a significant way infringing on their ability to exercise
      independent judgment.

6

7   United States v. Larrazolo, 869 F.2d 1354, 1359 (9th Cir. 1989) (internal citation & quotation

8   omitted).

9         Rule 6(e) of the Federal Rules of Criminal Procedure codifies the traditional rule

10  of grand jury secrecy, but does not define its outer limits; a release may violate grand jury secrecy

11  even if it does not necessarily violate the rule.  In re Special Grand Jury, 674 F.2d 778, 781 (9th

12  Cir. 1982).  Under the rule, a court may release grand jury material to a defendant "who shows

13  that a ground may exist to dismiss the indictment because of a matter that occurred before the

14  grand jury." Fed. R. Cr. P. 6(e)(3)(E)(ii).  To justify this release, the defendant must show what

15  has been described as a "particularized need:"

16        Parties seeking grand jury transcripts under Rule 6(e) must show
      that the material they seek is needed to avoid a possible injustice in
17        another judicial proceeding, that the need for disclosure is greater
      than the need for continued secrecy, and that their request is
18        structured to cover only material so needed.  Such a showing must
      be made even when the grand jury . . . has concluded its operations
19        . . .

20  Douglas Oil Co. v. Petrol Stops, 441 U.S. 211, 222 (1979).  This showing cannot be based on

21  speculation; "[i]t is not sufficient for [defendant] to assert that he has no way of knowing whether

22  prosecutorial misconduct occurred."  United States v. DeTar, 832 F.2d 1110, 1113 (9th Cir.

23  1987).  Moreover, if the request lacks "substantive purpose," it does not meet the standard of

24  particularized need.  United States v. Welch, 201 F.R.D. 521, 525 (D. Utah 2001).

25        The government does not seriously dispute defendant's contention that there is no

26  other way to secure the information he seeks, nor does it suggest that the grand jury was not

1   given any instruction on the gun charge.  It does argue, however, that defendant has not

2   overcome the presumption of regularity that attaches to grand jury proceedings.  Hamling v.

3   United States, 418 U.S. 87, 139 n.23 (1974).

4          Each side offers a case in support of its position.  The defense relies on United

5   States v. Peralta, 763 F.Supp. 14 (S.D.N.Y. 1991).  During the trial in Peralta, the defense

6   learned that the sole witness before the grand jury was an agent who presented a hearsay account

7   of the crime that differed from the trial testimony of the officer who had actually arrested the

8   defendant.  The court ordered the grand jury proceedings transcribed and learned that the U.S.

9   Attorney had given misleading instructions on the concept of constructive possession.  Id. at 20.

10  The court found the combination of the improper instruction plus the misleading hearsay

11  testimony, errors "which went both to the quality of the evidence before the grand jury and to the

12  requirements of the legal theory at the core of the government's case," justified dismissal.  Id. at

13  21.

14         On the other hand, the government notes that in United States v. Elliott, 363

15  F.Supp.2d 439 (N.D.N.Y. 2005), the defendant sought in camera review of grand jury minutes

16  and dismissal of the indictment.  The defendant claimed the indictment was invalid because it did

17  not identify a person with whom the defendant conspired and the only evidence showed that

18  defendant sold drugs to an undercover officer; he surmised that the instructions to the grand jury

19  must have been invalid.  Id. at 451-52.  The court rejected the request for release of the minutes

20  because defendant's request was based only on speculation.

21         Similarly, in United States v. Winchester, 407 F.Supp. 261, 277 (D. Del. 1975),

22  the defendant sought release of grand jury instructions on the ground that it would have been

23  difficult for the grand jury to have returned so voluminous an indictment within the short period

24  it was under consideration without simply relying on the prosecutor's summaries.  The court

25  rejected the request, finding that its speculative nature did not overcome the presumption of

26  regularity accorded to grand jury proceedings.  Id. at 278.

1    In United States v. Abrams, 539 F.Supp. 378 (S.D.N.Y. 1982), the court rejected

2    the defendants' request for release of the instructions to the grand jury, noting that

3    [t]he presumption of the regularity of the grand jury's proceedings
     would lead one to assume that the grand jury understood the

4    elements of all the offenses charged, and returned an indictment
     only on those counts for which it found sufficient probable cause.

5

6    Id. at 389.

7    Release of grand jury instructions may be proper when the Supreme Court has

8    altered precedent upon which instructions were based.  United States v. Mariani, 7 F.Supp.2d

9    556, 568 (M.D. Pa. 1998).  Nothing in United States v. Ruiz changed the law of Pinkerton

10   liability and constructive possession.  Instead, the case applied familiar principles to a specific set

11   of facts and did not suggest that standard instructions on the two concepts given during trial were

12   inadequate.  See 462 F.3d at 1087.

13   In this case, the court does not find that the defendant has overcome the

14   presumption of regularity in this case.  His request for release of the grand jury instructions is

15   based on his own evaluation of the evidence, which he finds insufficient in light of Ruiz, which

16   in turn leads him to conclude that the instructions must have been misleading in order for the

17   grand jury to have returned an indictment.  This sort of deductive reasoning is insufficient to

18   overcome the presumption of regularity.  Indeed, as in Ruiz, a properly instructed jury, grand or

19   petit, may return an indictment or a verdict later found to be insufficient.

20   This case is unlike United States v. Peralta, 763 F.Supp. at 14, upon which

21   defendant relies.  Although the court in that case was troubled by the inadequate instructions on

22   constructive possession given to the grand jury, it ultimately dismissed the indictment based on

23   the combined impact of the instructions and the problematic hearsay evidence presented to the

24   grand jury.

25   As a final matter, defendant suggests that he need not make a showing of

26   particularized need at all, because the instructions are not covered by grand jury secrecy.  Motion

6

at 7-8.  He relies on <u>United States v. Alter</u>, 482 F.2d 1016, 1029 n.21 (9th Cir. 1973), which noted that "the proceedings before the grand jury are secret, but the ground rules by which the grand jury conducts those proceedings are not."  Ultimately, the court declined to address Alter's complaint of errors in the instructions to the grand jury, which appeared to focus on the court's general instructions about the rights of witnesses and on the role of the grand jury.  <u>Id</u>.  This case provides little support for defendant's claim that the prosecutor's legal instructions are similarly not covered by grand jury secrecy.  <u>Compare</u> <u>In Re Grand Jury Investigations</u>, 903 F.2d 180, 182 (3d Cir. 1990) (grand jury secrecy designed to protect the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process).

   Accordingly, defendant's request for release of the grand jury instructions is denied.

   IT IS SO ORDERED.

DATED:  February 26, 2007.

_____
U.S. MAGISTRATE JUDGE

7